**Alexandria**

BONNIE THARPE, s/k/a
BONNIE JEAN THARPE

v.

COMMONWEALTH OF VIRGINIA

No. 2285-92-2

Decided March 8, 1994

38

COUNSEL

Buddy A. Ward (Office of the Public Defender, on brief), for appellant.

Margaret Ann B. Walker, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

COLE, S.J.—Appellant, Bonnie Tharpe, was convicted of uttering forged prescriptions in order to obtain controlled drugs. On appeal, she contends that she was absolutely immune from prosecution based on testimony she gave before a multi-jurisdiction grand jury and that the trial judge erred in denying her motion to dismiss the charges. For the reasons stated herein, we affirm.

## I.

On April 20, 1992, ten warrants of arrest were executed against appellant for five incidents of uttering forged prescriptions and obtaining (or attempting to obtain) controlled drugs by fraud and deceit. Tharpe was subpoenaed to appear before a May 27, 1992 multi-jurisdiction grand jury. The foreman advised her that she "need not answer any question that would tend to incriminate [her]" but that if she refused to testify, she could be compelled to do so. She was told that the compelled testimony could not be used against her (except for perjury) and that she was "entitled to the presence of counsel." Tharpe signed a form indicating that she

had read and understood her rights. She then gave testimony, some of which included statements regarding the charges for which she was convicted. A regular grand jury indicted Tharpe on the ten above-mentioned offenses during its July 1992 term.

On October 13, 1992, appellant's attorney filed a motion to dismiss all charges, arguing that, by statute, Tharpe was immune from prosecution for any drug charges for which she testified before the multi-jurisdiction grand jury. At the October 21, 1992 hearing on the motion to dismiss, the prosecution conceded that Tharpe "did not want to talk about" her drug-related charges before the multi-jurisdiction grand jury, "but she did eventually talk about it [sic]." The prosecutor stated that he did not intend to use her testimony in prosecuting the charges. Finding that Code § 19.2-215.7 allows only for "use" immunity and omits any reference to "transactional" immunity contained in Code § 18.2-262, the trial judge held that the Commonwealth was not prohibited from prosecuting appellant as long as it did not use her multi-jurisdiction grand jury testimony against her.

Appellant entered conditional guilty pleas to eight counts.[1] On November 11, 1992, she was sentenced to eight consecutive two-year prison terms with all but three years and three months suspended.

## II.

### A.

Three levels or degrees of immunity exist: use immunity, derivative use immunity, and transactional immunity.

> *Use immunity* protects the witness only from "the use of the specific testimony compelled from him under the grant of immunity," but not from evidence obtained as a result of such testimony. Courts have recognized that witnesses protected only by use immunity may be pursued by prosecutors with evidence indirectly derived from compelled testimony.

*Gosling v. Commonwealth*, 14 Va. App. 158, 164, 415 S.E.2d 870, 873 (1992) (emphasis added) (quoting *Kastigar v. United*

---

[1] The Commonwealth requested that the trial judge arraign appellant only on counts three through ten, and it later nolle prossed the first two counts.

*States*, 406 U.S. 441, 449-50 (1972)).

> *Derivative use immunity* prohibits use against the witness of evidence even indirectly obtained from his testimony, while *transactional immunity* accords complete immunity from prosecution to the witness for the offense related to compelled testimony.

*Gosling*, 14 Va. App. at 164, 415 S.E.2d at 873 (emphasis added).

## B.

In 1971, the legislature enacted former Code § 54-524.107:1, which was originally contained in Chapter 15.1, entitled "The Drug Control Act" of 1970. That statute has been retained, substantially unchanged, and is presently codified in Code § 18.2-262, which provides, in pertinent part:

> No person shall be excused from testifying or from producing books, papers, correspondence, memoranda or other records for the Commonwealth as to any offense alleged to have been committed by another under this article [Drugs] or under the Drug Control Act (§ 54.1-3400 et seq.) by reason of his testimony or other evidence tending to incriminate himself, but *the testimony given and evidence so produced* by such person on behalf of the Commonwealth when called for by the trial judge or court trying the case, or by the attorney for the Commonwealth, or when summoned by the Commonwealth and sworn as a witness by the court or the clerk and sent before the grand jury, *shall be in no case used against him nor shall he be prosecuted as to the offense as to which he testifies.*

(Emphasis added).

In 1983, the legislature enacted Chapter 13, Article 4 of Title 19.2 containing statutory provisions for "Multi-jurisdiction Grand Juries." The first two code sections in that article describe the nature of and procedure for instituting such a grand jury, and provide, in pertinent part, as follows:

> **§ 19.2-215.1 Functions of a multi-jurisdiction grand jury.** To investigate . . . violations of Title 18.2, Chapter 7, Articles 1 (drugs) and 1.1 (drug paraphernalia).

**§ 19.2-215.2 Application for such grand jury.** If the Attorney General approves the application, Commonwealth attorneys from affected jurisdictions may submit detailed application to the Supreme Court.

The following code section pertains to immunity for witnesses:

**Code § 19.2-215.7. Warnings given to witnesses; when witnesses in contempt; use of testimony compelled after witness invokes right against self-incrimination.**
A. Every witness testifying before a multi-jurisdiction grand jury shall be warned by special counsel or by the foreman of the grand jury that he need not answer any question that would tend to incriminate him, and that he may later be called upon to testify in any case that may result from the grand jury proceedings.
B. A witness who has been called to testify or produce evidence before a multi-jurisdiction grand jury, and who refuses to testify or produce evidence by expressly invoking his right not to incriminate himself, may be compelled to testify or produce evidence by the presiding judge. A witness who refuses to testify or produce evidence after being ordered to do so by the presiding judge may be held in contempt and may be incarcerated until the contempt is purged by compliance with the order.
C. When a witness is compelled to testify or produce evidence *after expressly invoking his right not to incriminate himself*, and the presiding judge has determined that the assertion of the right is bona fide, *the compelled testimony, or any information directly or indirectly derived from such testimony or other information, shall not be used against the witness in any criminal proceeding* except a prosecution for perjury.

(Emphasis added).

Code § 19.2-215.9 provides in pertinent part:
C. If any *witness who voluntarily testified or produced evidence before the multi-jurisdiction grand jury is prosecuted on the basis of his testimony or the evidence he produced*, or if any witness who was compelled to testify or to produce evidence is prosecuted for perjury on the basis of his

testimony or the evidence he produced before the multi-jurisdiction grand jury, the presiding judge, on motion of either the Commonwealth or the defendant, shall permit both the [parties] access to the testimony of or evidence produced by the defendant before the multi-jurisdiction grand jury. The testimony and the evidence produced by the defendant voluntarily before the multi-jurisdiction grand jury shall then be admissible in the trial of the criminal offense with which the defendant is charged, for the purpose of impeaching the defendant.

(Emphasis added).

Essentially, former Code § 54-524.107:1 (now Code § 18.2-262) grants "transactional immunity" to a witness for any drug crimes about which the witness is compelled to testify. *See Caldwell v. Commonwealth*, 8 Va. App. 86, 89, 379 S.E.2d 368, 370 (1989). In contrast, Code § 19.2-215.7 allows for "use immunity" and "derivative use immunity" when a witness invokes the privilege against self-incrimination but is compelled to testify. Under *Gosling*, once the privilege is invoked, "derivative use immunity" is the minimum protection afforded in order to be "consonant and coextensive with constitutional safeguards and, thus, sufficient to supplant the privilege." 14 Va. App. at 164, 415 S.E.2d at 873 (relating to immunity under Code § 19.2-270).

### III.

Appellant concedes that her argument on appeal has merit only if Code § 18.2-262 applies to her situation. Conversely, should Code § 19.2-215.1 *et seq.* apply, appellant will not prevail because she was given derivative use immunity by the Commonwealth as required under that code section, *viz.*, the Commonwealth did not use appellant's testimony, directly or indirectly, to convict her.

We initially find that appellant never invoked her constitutional privilege against self-incrimination before the multi-jurisdiction grand jury. The record indicates that appellant was advised that she need not answer any incriminating questions but that if she refused to answer, she could be compelled to do so. Appellant indicated in writing that she understood this warning. However, she testified about the drug crimes without affirmatively invoking her privilege. *See Garner v. United States*, 424 U.S. 648, 654 (1976)

("[I]n the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself"); *Gosling*, 14 Va. App. at 165, 415 S.E.2d at 873-74 (indicating that immunity becomes an issue only when privilege against self-incrimination is invoked). In essence, appellant waived the constitutional privilege.

Code § 18.2-262 (formerly § 54-524.107:1) applies to offenses arising under Title 18.2, Chapter 7, Article 1 (Drugs) or "The Drug Control Act." In 1983, the legislature indicated its intention to carve out a narrow exception to Code § 18.2-262 by providing that in drug cases involving multi-jurisdiction grand juries, immunity is more limited.

It is elemental that the legislature is presumed to know the law in effect when it enacts subsequent laws. "In construing a statute the court should seek to discover the intention of the legislature as ascertained from the act itself when read in the light of other statutes relating to the same subject matter." *Robert Bunts Eng'g & Equip. Co. v. Palmer*, 169 Va. 206, 209, 192 S.E. 789, 790 (1937), *quoted in Campbell v. Commonwealth*, 13 Va. App. 33, 38, 409 S.E.2d 21, 24 (1991), *rev'd in part on other grounds*, 14 Va. App. 988, 421 S.E.2d 652 (1992) (en banc), *aff'd*, 246 Va. 174, 431 S.E.2d 648 (1993). "Two statutes which are closely interrelated must be read and construed together and effect given to all of their provisions. They should be construed, if possible, so as to harmonize, and force and effect should be given the provisions of each." *ACB Trucking, Inc. v. Griffin*, 5 Va. App. 542, 547-48, 365 S.E.2d 334, 337-38 (1988) (citation omitted). Moreover, "[s]tatutes must be construed consistently with each other and so as to reasonably and logically effectuate their intended purpose." *Nelson v. County of Henrico*, 10 Va. App. 558, 561, 393 S.E.2d 644, 646 (1990) (citation omitted).

"While [two] statutes [may be] related as to [their] subject matter, [one] cannot be utilized to create doubt in [the related and] otherwise clear statute." *Seehorn v. Seehorn*, 7 Va. App. 375, 383, 375 S.E.2d 7, 11 (1988). This is especially true where, as here, the later-enacted statute deals with a specific and limited exception. "[W]hen one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and

where they conflict, the latter prevails." *Virginia Nat'l Bank v. Harris*, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979); *see also Houtchens v. Lane*, 246 Ind. 540, 545, 206 N.E.2d 131, 134 (1965) (holding that where there is a conflict between statutes, the more recent statute is controlling and a specific provision prevails over a general provision relating to the same subject matter). *Compare* Code § 19.2-215.7 (addressing the narrow, specific exception for multi-jurisdiction grand juries) *with* Code § 18.2-262 (addressing grand juries generally).

Thus, in order to give full force and effect to both statutes, we find that the legislature intended for the later-enacted statute (Code § 19.2-215.1 *et seq.*) to control testimony before multi-jurisdiction grand juries.

 Appellant was summoned and appeared before a multi-jurisdiction grand jury. She was advised of her right against self-incrimination pursuant to Code § 19.2-215.7. In accordance with the analysis contained herein, we hold that Code § 19.2-215.1 *et seq.* controls multi-jurisdiction grand jury procedures and affords to witnesses use immunity and derivative use immunity rather than transactional immunity. Because the Commonwealth did not use appellant's testimony directly or indirectly in its prosecution, we affirm the trial court's judgment.

*Affirmed.*

Barrow, J., and Bray, J., concurred.